CHARLES H. FLEMING, plaintiff in error, *v.* THE PEOPLE,
defendants in error.

On the trial of an indictment for bigamy, it is not necessary to prove that, at
   the time of the alleged second marriage, the defendant did not come within
   any of the exceptions mentioned in part 4, chapter 1, title 5, article 2, sec-
   tion 9 of the Revised Statutes.
An objection that an indictment for bigamy contains no averment that the pris-
   oner does not come within the exceptions set forth in section 9 of the statute,
   if available at all, should be made before judgment.   After judgment it is too
   late to raise the question.

The following indictment was presented against the pris-
oner :

*City and County of New York, ss:*

The jurors of the People of the State of New York, in and
for the body of the city and county of New York, upon their
oath present: That Charles H. Fleming, late of the first ward
of the city of New York, in the county of New York afore-
said, on the eleventh day of November, in the year of our
Lord one thousand eight hundred and fifty-five, did marry one
Rowena Baldwin, and her, the said Rowena, did then and
there have for wife; and the said Charles, afterwards, to wit,
on the thirty-first day of December, in the year of our Lord
one thousand eight hundred and sixty-one, at the ward, city
and county aforesaid, with force and arms, did feloniously
marry and take as his wife one Jane A. Butt, and to the said
Jane was then and there married, the said Rowena being then
and there living, and in full life, against the form of the statute
in such case made and provided, and against the peace of the
People of the State of New York and their dignity.

A. OAKEY HALL, *District Attorney.*

A plea of " not guilty" was put in, and the issue was tried
at a Court of General Sessions, held in the city of New York,
on the 24th day of April, 1862, before HOFFMAN, recorder.

Several witnesses were examined, and different questions of law were raised on the trial.

The counsel for the prisoner, among other things, requested the court to charge, that in order to justify a conviction it was necessary to prove that, at the time of the alleged marriage between the defendant and Jane A. Butt, the defendant did not come within any of the exceptions mentioned in part 4, chapter 1, title 5, article 2, section 9 of the Revised Statutes. The court refused so to charge, and the prisoner's counsel excepted.

The jury found the prisoner guilty, and a writ of error was sued out, under which the record was removed into this court.

*Henry L. Clinton,* for the prisoner, made the following points:

The sections of the statute applicable to this case are as follows:

§ 8. " Every person having a husband or wife living, who shall marry any other person, whether married or single, shall, *except in the cases specified in the next section,* be adjudged guilty of bigamy, and upon conviction shall be punished by imprisonment in a State prison for a term not exceeding five years."

§ 9. " The last section shall not extend to the following persons or cases:

1. " To any person, by reason of any former marriage, whose husband or wife by such marriage shall have been absent for five successive years, without being known to such person within that time to be living; nor

2. " To any person, by reason of any former marriage, whose husband or wife by such marriage shall have absented himself or herself from his wife or her husband, and shall have been continually remaining without the United States for the space of five years together; nor

3. " To any person, by reason of any former marriage, which shall have been dissolved by the decree of a competent court, for some cause other than the adultery of such person; nor

4. " To any person, by reason of any former marriage, which

shall have been pronounced void by the sentence or decree of a competent court, on the ground of the nullity of the marriage contract; nor

5. "To any person, by reason of any former marriage contracted by such person, within the age of legal consent, and which shall have been annulled by a decree of a competent court; nor

6. "To any person, by reason of any former marriage, with a husband or wife, who shall have been sentenced to imprisonment for life." (3 *R. S.*, 967, 968.)

I. The indictment, within the rules of criminal pleading, does not set forth a criminal offense, and for that reason the judgment should be reversed.

It was clearly necessary to aver that the prisoner did not come within the exceptions alluded to in the eighth section above cited, and set forth in detail in the ninth section, to which the eighth section particularly refers.

It is conceded that in indictments it is not necessary to negative exceptions, *not alluded to* in the enacting clause, which describe the offense, but which are embraced in separate and distinct sections. The correct rule upon this subject, which runs through all the adjudged cases, is stated correctly and with precision in 1 *Chitty's Cr. L.*, 284, as follows: "If the exceptions themselves are stated in the enacting clause, it will be necessary to negative them in order that the description of the crime may, in all respects, correspond with the statute. Thus, in an indictment on the statute which enacts, that if any person shall take, receive, pay or put off any counterfeit milled money, or any milled money whatsoever, unlawfully diminished, *and not cut in pieces*, for a lower rate than its nominal value, he shall be guilty of felony; it is absolutely necessary to state that the money was not cut in pieces, and if those words be omitted, the informality will be fatal. And in an indictment upon the first section of the same act, for keeping a press for coinage, or other crimes thereby created, all the exceptions by which, under that clause, the possession might be lawful, or the defendant in any way derive authority to

exculpate him, must be expressly negatived. Upon the same ground an information for importing goods from Holland is insufficient, unless it aver that they were not of the growth of that country."

It will be perceived that in our statute of bigamy the exceptions are expressly alluded to in the enacting clause (§ 8, *above cited*), and form a material part of the description of the offense. The language of the enacting clause (§ 8) is, "Every person having a husband or wife living, who shall marry any other person, whether married or single, shall, *except in the cases specified in the next section*, be adjudged guilty of bigamy," &c.

Marrying while a previous husband or wife is living, is not necessarily and of itself a criminal offense. The *criminality* depends upon the existence or non-existence of other facts.

It cannot be successfully maintained that the *exceptions* are matter of defense, and, therefore, need not to be negatived. A review of the authorities will show most conclusively that when the exceptions are referred to, as in this case, in the enacting clause, they should be negatived in the indictment and by the proof on the part of the prosecution.

The authorities on this point are numerous, but the following will suffice :

"The statute (791, *ch.* 58, § 3) provides, in the enacting part, that no innholder, &c., shall entertain any persons, not being travelers, strangers, or lodgers, on the Lord's day, under the penalty of ten shillings for each person so entertained." *Held*, that an indictment on this section or clause should state the precise number of persons entertained, *and should negative that they were travelers, &c. (Commonwealth* v. *William Maxwell*, 2 *Pick. R.*, 139.)

PUTNAM, J., in delivering the opinion of the court in this case (141), observes: "The objection which has been made to the first count, and which we consider as fatal, is, that it does not appear from that count but that the persons entertained were lodgers at the defendant's house, in which case he would not be guilty of any offense. The rule is, that where

Fleming *v.* The People.

the enacting clause describes the offense, *with certain exceptions,* it is necessary to state all the circumstances which constitute the offense and to negative the exceptions."

Our statute of bigamy in the enacting clause describes the offense "with certain exceptions," the language being, "shall, *except in the cases* specified in the next section, be adjudged guilty of bigamy." It is therefore necessary in an indictment "to negative the exceptions."

. PUTNAM, J., in *Com.* v. *Maxwell* (2 *Pick. R.,* 139, *cited above*), further observes: "In *Rex* v. *Jarvis* (*cited in* 1 *East R.,* 643, *note*), Lord MANSFIELD and his associate judges speak of this as a known distinction. That case is reported in *Burr.,* 148. It was a conviction under the game laws, where one of the qualifications, viz., being a gamekeeper, was not negatived, and the conviction was quashed. So in 1st *East's Pl.* (*ch.* 166), upon an indictment for counterfeiting coin, all the judges held that it ought to be averred that the party was not employed in the mint or authorized by the treasurer, *because the exception is in the enacting clause and part of the description of the offense.*

An indictment for selling liquors without a license ought to allege that the respondent was not authorized to sell liquors in any mode designated by the statute, particularly negativing each source from which he might have obtained a license." (*State* v. *Sommers,* 3 *Vermont R.,* 156.)

In *Matthews* v. *State* (2 *Yerger R.,* 233), it was held that where a statute contained provisos and exceptions in separate and distinct sections or clauses, it is not necessary to state in the indictment that the defendant does not come within the exceptions, but that where exceptions *form a part of the enacting clause of a statute, they must be negatived in the indictment, or the judgment will be arrested.* It is held that "an indictment for concealing and secreting counterfeit bank notes, founded on the act of 1813 (*ch.* 65, § 1), must aver that the defendant had not kept, concealed, possessed or secreted said counterfeit bank notes innocently, ignorantly, and without knowing their use and *nature.*" In this case the enacting clause of the statute

concluded as follows : " Provided always that such person or persons shall not be held, taken, deemed or adjudged guilty, within the meaning of this clause, of any of the offenses therein mentioned, if he, she or they had kept, possessed, had, concealed or secreted, or aided, assisted, or was concerned in the having, keeping, possessing, hiding, concealing, such 'counterfeit bill or bills, note or notes, *innocently*, ignorantly, and without knowing their use and nature, or who, knowing the same to have been had, kept, possessed, hid, concealed or secreted, shall not discover the same or his or her knowledge thereof, as aforesaid, through innocence, ignorance, and want of knowledge of their use and nature."

WHITE, J., in delivering the opinion of the court in this case (*p.* 237), observes : " If the exceptions themselves are stated in the enacting clause, it will be necessary to negative them in order that the *description of the crime* may in all respects correspond with the statute. Thus, in an indictment upon the first section of the statute (8 *and* 9 *William III, ch.* 26), for keeping a press for counterfeiting, or other crimes thereby created, *all the exceptions* by which, under that clause, the possession might be lawful, or the defendant in any way derive authority to exculpate him, *must be expressly negatived.*"

In an indictment under the act of 1830, prohibiting any persons other than Indians from making settlements within their territory, it is necessary to aver that the defendant is not an Indian. (*State* v. *Craft, Walker* [*Miss.*] *R.*, 409.)

When an act is constituted an offense by statute, and there is an exception in the body of the statute, which enters into it as part of the description, the exception must be negatived in an indictment for committing the offense. In an indictment founded upon section 1, ch. 82 of the Revised Statutes, which prohibits, on the Sabbath, the exercise of " any secular labor, business or employment, except such only as works of *necessity* or charity, it must be alleged that the act charged as an offense against the statute was not a work of necessity or charity." (*State* v. *Barker*, 18 *Vermont R.*, 195.)

BURNETT, J., in this case (*p.* 197), observes : " It is neces-

sary, then, in order to constitute a violation of this statute, that the work complained of should not be a work of necessity or charity; and the effect is the same as if the exceptions in the statute had been in this form, *not being works of necessity or charity.* It would then be quite apparent that the latter words would qualify and explain what kind of labor, business and employment was prohibited."

" An indictment under the act of 1816, to prevent gaming, against a person for permitting persons to play at cards in her house, being a public house, is not good, unless it state that the persons were playing at such games as were not *excepted* in the act; and where a conviction has taken place on such an indictment, judgment will be arrested." (*Reynolds* v. *State,* 2 *Nott & McCord,* 365.)

NOTT, J., in delivering the opinion of the court, says: " In this case the defendant is merely charged with permitting persons to play cards at her house. And as that is not, under *all circumstances,* unlawful, she may, for anything that the court can perceive, be innocent of any offense."

In *Horn* v. *State* (1 *Ohio R.,* 16), it was held, that where an exception or proviso entered into and became a part of the description of the offense, or a *qualification of the language* defining or creating it, such exception or proviso should be specifically negatived in an indictment. In that case the defendant was indicted for selling spirituous liquors, under the first section of the act of 1851, at the close of which was a proviso in these words: " Provided that nothing contained in this section shall be so construed as to make it unlawful to sell any spirituous liquors for medicinal and pharmaceutical purposes." It was held that an indictment which did not negative these exceptions was fatally defective, and the judgment below was reversed on this ground. BARTLEY, J., in delivering the opinion of the court, says : " When, therefore, the matter of the proviso or exception in the statute, whether it be embraced within what has been termed the enacting clause or not, enters into and becomes a part of the description of the offense, or a material *qualification* of the language which defines

or creates the offense, the negative allegation in the indictment is requisite."      *      *      *      *      *      *      *      *

"In the case before the court, the matter of the proviso in the first section of the act of 1851 points directly to the character of the offense, is in the same sentence with it, and made a material qualification in the statutory description of it."

In the case at bar, the exceptions being specifically alluded to in the eighth section, that section or clause of the statute merely referring to the following section for an enumeration of the sections, the exceptions, to all intents and purposes, are the same as though they had been enumerated in detail in the enacting clause, or eighth section, of the statute. The eighth section provides that one "shall," except in the cases specified, "be adjudged guilty of bigamy," &c., the exceptions being thus incorporated in the eighth section.

In a similar case, involving the same principle of construction, in *State* v. *Palmer* (18 *Vermont R.*, 570), the court very strongly intimate "that as the exceptions are mentioned in the enacting clause of the fifth section, referring to the next section for the particulars, it should have been alleged that the respondent was not within them." .

It has never been held by any recognized authority that it was not necessary, in an indictment for bigamy, to negative exceptions specified, or alluded to, as forming part of the description of the offense, or qualifying the offense (as in our statute). Whenever it has been maintained that it was not necessary to negative such exceptions, it will be found that the statutes did not contain, in the enacting clause, any reference to such exceptions.

Had our statute, in the enacting clause (eighth section), omitted the words, "except in the cases specified in the next section," it probably would not have been necessary to negative those exceptions. In that event, the exceptions stated in a subsequent section would have been, for the purposes of pleading as well as proof, purely matters of defense, as the learned court below charged the jury.

Whether to negative such exceptions by the indictment and

the evidence on the part of the prosecution, would result in much inconvenience, is not the question. The strict and inflexible rules of criminal law cannot be overturned or modified to suit the convenience of parties.

It is enough to say that the offense of bigamy, as described in the enacting clause of our statute, is not set forth in the indictment. All charged in the indictment may be true, and the prisoner innocent of any offense according to the language and meaning of that 8th section.

II. Penal or criminal statutes must be construed strictly, and in favor of the liberty of the citizen.

HOSMER, Ch. J., in *Daggett* v. *The State* (4 *Conn. R.*, 63), correctly observes: "The rule has long been established that penal statutes must be construed strictly. * * * More correctly, it may be said that such laws are to be expounded strictly against an offender, and liberally in his favor. * * * * * In extension of the letter of the law, nothing may be assumed by implication; nor may the mischief intended to be prevented or redressed, as against the offender, be regarded in its construction."

In *Lair* v. *Killmer* (1 *Dutcher*, 522), GREENE, Ch. J., says: "In defining the crime and the punishment, penal statutes are to be taken strictly and literally. A penal law cannot be extended by construction." In *State* v. *King* (12 *Louis. R.*, 593), it was held that, in construing penal statutes, courts cannot take into view the motives of the lawgiver, further than they are expressed in the statute.

III. The learned court below erred in refusing to charge the jury that, in order to justify a conviction, it was necessary to prove that at the time of the alleged marriage between the defendant and Jane A. Butt (the second wife as alleged), the defendant did not come within any of the exceptions mentioned in the 9th section above alluded to.

*A. Oakey Hall* (District Attorney), for the People.

The court correctly charged that the statutory exceptions were entirely matters for defense.

1. The elementary rule is thus stated in 3 *Greenl. Ev., Verbo* "*Polygamy,*" § 208 : "The defense may also be made by show-ing that the prisoner's case comes within any of the exceptions found in the statutes," &c. (*See also Whar. Am. Crim. Law,* § 378.)

2. The reason of this is, that it is affirmative proof. The prosecution is not called upon to prove a negative. The evi-dence of exception is peculiarly within a defendant's power.

*By the Court,* CLERKE, J. The counsel for the prisoner requested the court to charge, that, in order to justify a con-viction, it was necessary to prove that, at the time of the alleged marriage between the defendant and Jane A. Butt, the defendant did not come within any of the exceptions in part 4, chapter 1, title 5, article 2, section 9 of the Revised Statutes. That is, although the prosecutor proved a second marriage at the time the defendant's wife by the first marriage was living, he should also, for instance, have proved that the first wife was not absent for five successive years without being known to the defendant within that time to be living ; and so as to all the other exceptions mentioned in the statute.

It is easy to perceive, if this should be required in every prosecution for what is called bigamy, that the result would be what Lord ELLENBOROUGH declared would be the result in *Rex* v. *Turner* (5 *Maule & Sel.,* 206), "that there would be a moral impossibility of ever convicting upon such a charge," which was a charge against a carrier for having game in his possession, without the prosecutor's proving that he had not the qualifications which would exempt him from prosecution. "The question," says his lordship, "is upon whom the *onus probandi* lies; whether it lies upon the person who affirms a qualification to prove the affirmative, or upon the informer, who denies any qualification, to prove the negative."

The principle decided in *The Apothecaries' Co.* v. *Bentley* (1 *Carr. & P.,* 309, 12 *Eng. Com. L. R.,* 537), applies still more accurately to the case before us. That was an action of debt on the apothecaries' act (55 *Geo. III, ch.* 194, § 20) for a penalty for practicing as an apothecary, without having obtained a

Fleming *v.* The People.

certificate from the apothecaries'· company under that act; it was held it was not necessary to prove on the part of the plaintiffs, that the party had not obtained his certificate; the *onus* lying on him to show that he has.

Brougham, who was counsel for the defendant, contended that it was incumbent on the company to prove this. "If," he continues, "in the act, the certificate had *been mentioned in a separate proviso as an exemption from the penalty*, it would then be matter of defense; but as it was incorporated in the clause which gave the penalty, it must be negatived by an averment in the declaration, and that averment must be proved." The court overruled the objection and decided, as it was in the negative, the proof lies with the defendant. But we need not go further than the case of *Potter* v. *Deyo* in our own courts (19 *Wend. R.*, 361), to show that it is not necessary for the prosecutor to prove an exception or disqualification in any instance. The *onus probandi*, in all such cases, lies with the defendant.

As to the objection that the indictment did not aver that the prisoner did not come within the exceptions alluded to in the 8th section of the statute, and set forth in detail in the 9th section, there was no objection taken to the indictment on this ground at the trial or at any other time. It is a defect, if at all, in a matter of form, which could not tend to the prejudice of the defendant (2 *R. S.*, 728, § 51), and, therefore, the judgment cannot be affected by it.

It is unnecessary to notice the other points taken by the defendant's counsel. I deem them palpably untenable.

The judgment should be affirmed.